**Berlene Parks JENSEN, Appellant,**

v.

**Robert Lee JENSEN, Appellee.**

**No. 1503.**

Court of Appeals of Texas, Tyler.

Feb. 19, 1982.

Rehearing Denied March 25, 1982.

McKAY, Justice.

This appeal is from a division of property in a divorce. Appellant, Burlene Parks Jensen, appeals the award to appellee, Robert Lee Jensen, of the enhancement in value of his separate property stock. We reverse and remand with instructions.

On March 20, 1975, prior to marrying appellant, Mr. Jensen formed RLJ Printing Company, Inc. (RLJ) to acquire Newspaper Enterprises, Inc. (Newspaper Enterprises). RLJ, a closely held corporation,[1] issued 100,-000 shares of stock, and Mr. Jensen purchased 48,455 of these shares as his separate property. In addition to his outright ownership of 48,455 shares, appellee acts as trustee for 2,000 additional shares. Thus, he controls a majority of the shares of RLJ. Mr. Jensen is chairman of the board and president of RLJ and chairman of the board of Newspaper Enterprises. On July 21, 1975, after appellee purchased the RLJ shares, appellant and appellee married. As we will discuss in detail later, during their marriage the value of shares of RLJ stock appreciated greatly. Almost four years later, on June 3, 1979, they separated.

Mrs. Jensen petitioned for divorce from Mr. Jensen, alleged insupportability as grounds, and requested a division of the estate of the parties. Mr. Jensen cross-petitioned for divorce and answered that the trial court was not permitted to award Mrs. Jensen any of his separate property; alternatively, he pleaded that no factual, legal or equitable basis existed to award Mrs. Jensen any of his separate property.

Trial was to the court. The only controversies at trial related to Mrs. Jensen's claim to an interest in the enhancement in value of the shares of RLJ stock acquired by Mr. Jensen prior to their marriage. The court, on May 31, 1980, granted the divorce, found that the increased value of the RLJ shares was Mr. Jensen's separate property, divided the property, and filed the following findings of fact and conclusions of law:

James D. Blume, John Albach, Albach, Gutow, & Blume, Dallas, for appellant.

Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellee.

1. Appellant does not contend that RLJ is Mr. Jensen's alter ego corporation.

## FINDINGS OF FACT

1. The RLJ Printing Co., Inc. was created by Respondent before the marriage of the parties.

2. RLJ Printing Co., Inc. acquired the stock of Newspaper Enterprises, Inc., 64 days before the marriage of the parties in a unique business opportunity.

3. RLJ Printing Co., Inc. is not an alter ego of the Respondent.

4. RLJ Printing Co., Inc. was not created in fraud of the rights of the community estate.

5. The salary paid Respondent has been adequate and reasonable.

6. The dividends paid Respondent have been adequate and reasonable.

7. The bonuses paid Respondent have been adequate and reasonable.

8. Respondent was the key man in the operation of RLJ Printing Co., Inc.

9. The successful operations of RLJ Printing Co., Inc., were primarily due to the time, toil and effort of Respondent.

## CONCLUSIONS OF LAW

1. The community was not the equitable owner of any shares of RLJ Printing Co., Inc.

2. The community was not entitled to receive the value of the appreciation in shares of RLJ Printing Co., Inc. that was due to the time, toil and effort of Respondent.[2]

Mrs. Jensen brings two points of error. Her first point is that the trial court erroneously concluded the community was not entitled to receive the value of the appreciation of RLJ stock. She contends the community is entitled to receive the benefits of the time, toil, and effort of members of the community, and that, therefore, the enhancement in value of the RLJ stock is community property. We agree with appellant and sustain her first point of error.

The foundation of the Texas community property system is that whatever is acquired by the effort of the husband and wife is their common property. *DeBlane v. Hugh Lynch & Company*, 23 Tex. 25, 29 (1859). In Texas, the time, talent, and industry of either spouse is wholly owned by the community. If one spouse's separate property is increased because of the time, talent, and industry of either spouse, exceeding that required to preserve the separate property, then the increase becomes community property. *Tarver v. Tarver*, 394 S.W.2d 780, 786 (Tex.1965); *Norris v. Vaughan*, 152 Tex. 491, 260 S.W.2d 676, 682 (1953); *Marriage of York*, 613 S.W.2d 764, 770 (Tex.Civ.App.—Amarillo 1981, no writ). Although the Texas Supreme Court apparently has not specifically addressed the characterization and disposition on divorce of the enhancement in value of separate corporate shares, the weight of authority indicates that "an increase in the value of the corporate stock ... should be attributable to and become a part of the community estate, if the increase in value is a result of the time, effort, and talent of the community...." O. Speer, *Texas Family Law* § 15:50 at 115 (5th ed. 1975); *See Logan v. Logan*, 112 S.W.2d 515, 525 (Tex.Civ.App.—Amarillo 1937, writ dism'd); Comment, *The Effect of Community Time, Talent, and Industry Upon Separate Property* 22 Baylor L.Rev. 527, 542 (1970).

Mr. Jensen purchased RLJ shares at an average price per share of $1.56. All valuations indicate that shares of RLJ stock have increased greatly in value. At the time of trial, the book value of the stock was $14.14 per share. Appellant's expert witness testified that the value per share was $25.77, and appellee's expert witness stated that each RLJ share was worth $13.78.

Mr. Jensen testified that he spent "a good 90%" of his work time running RLJ and Newspaper Enterprises during the parties' marriage. Although testimony was presented that inflation accounted for an unspecified portion of the increased value,

2. Conclusions of Law two and three were identical.

the trial court found, and Mr. Jensen in his brief agrees, that the success of RLJ was primarily due to his time, toil, and effort. We believe, therefore, that the appreciation in value of the shares of RLJ stock is a community asset.

Appellee relies on *Scofield v. Weiss*, 131 F.2d 631 (5th Cir. 1942); *Faulkner v. Faulkner*, 582 S.W.2d 639 (Tex.Civ.App.—Dallas 1979, no writ); *Johnson v. First National Bank of Forth Worth*, 306 S.W.2d 927 (Tex. Civ.App.—Fort Worth 1957, no writ), and *Fain v. Fain*, 93 S.W.2d 1226 (Tex.Civ.App. —Fort Worth 1936, writ dism'd). We believe that *Scofield v. Weiss, supra*, is distinguishable. It is a gift tax case, and its holding, although supposedly based upon Texas law, relies upon *Beals v. Fotenot*, 111 F.2d 956 (5th Cir. 1940), a case arising in Louisiana under a Louisiana statute. We think that *Johnson v. First National Bank of Fort Worth, supra*, is not in point with the facts here inasmuch as there the increase in value was not due to the time, effort and talent of the community. Moreover, we do not feel that *Fain v. Fain, supra*, and *Faulkner v. Faulkner, supra*, directly address the issue involved here.

Mrs. Jensen's second point of error is that the court erred in making findings of fact five and seven that the salary and bonuses paid Mr. Jensen were adequate and reasonable because the evidence conclusively establishes they were inadequate and unreasonable. These findings relate to appellant's assertion that the community may be entitled to the difference between income actually received by Mr. Jensen and the income the community would have received had Mr. Jensen been fully compensated. Since we have decided that the enhancement in value of RLJ shares is community, we need not address appellant's second point of error.

■ Although appellant raises no specific point of error that the trial court abused its discretion in awarding the enhanced value of the RLJ corporate shares to Mr. Jensen, she does argue that the trial court's mischaracterization of the RLJ stock increase in value is an abuse of discretion requiring reversal. We will, therefore, address the issue of whether the trial court abused its discretion as a result of its mischaracterization. Rule 418, Tex.R.Civ.P.; *Duerer v. G. B. Mueller, Inc.*, 516 S.W.2d 221, 222 n. 1 (Tex.Civ.App.—Austin 1974, no writ).

Section 3.63 of the Texas Family Code (Vernon Supp.1981) requires the trial court to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party...." The phrase "estate of the parties" refers to community property. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139 (Tex.1977). Mrs. Jensen correctly complains that the trial court mischaracterized community property as separate property, but she must also "show the trial court would have made a different division if the property had been properly characterized." *Smith v. Smith*, 620 S.W.2d 619, 625 (Tex.Civ.App.—Dallas 1981, no writ). As Judge Guittard reasoned in *Smith v. Smith, supra*, any other rule would presume harm from a trial court's error of law. This result would clearly contravene Rule 434, Tex.R.Civ.P.

■ In dividing community property, the trial court may consider all the circumstances of the parties, *Merrell v. Merrell*, 527 S.W.2d 250, 255 (Tex.Civ.App.—Tyler 1975, writ ref'd n. r. e.), including the health, capacities, and abilities of the parties, disparity in earning powers and business experience, the nature and potential of the property itself, and probable future need for support. *Smith v. Smith*, 569 S.W.2d 629, 631 (Tex.Civ.App.—Tyler 1978, writ ref'd n. r. e.); *Bokhoven v. Bokhoven*, 559 S.W.2d 142, 144 (Tex.Civ.App.—Tyler 1977, no writ). The court of appeals presumes the trial court exercised its discretion properly and reverses the trial court only where its discretion was clearly abused. *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex.1974).

The court, in its oral rendition of judgment, stated:

I'm going to find that the RLJ stock is the separate property and that there is no entitlement on the part of the Petitioner

[Mrs. Jensen] into the increased value. However, I will take into consideration when I deal with the community property because there has been a very fortuitous and a very well-earned enhancement of that property interest (sic).

The trial court awarded Mr. Jensen items of separate property, including the 48,455 shares of RLJ stock in dispute, and found that Mrs. Jensen owned certain articles as separate property. The court then characterized and divided the parties' community property. The following community assets were disproportionately divided: Mrs. Jensen received a 1976 Buick Century automobile valued at $2,600; a townhouse valued at between $105,000 and $110,000 subject to an outstanding $74,000 mortgage; and, the townhouse furnishings and fixtures, with certain specified exceptions.[3] Mr. and Mrs. Jensen were both required to pay certain debts. Mr. Jensen had to pay two disproportionate ones: approximately $1,695.75 due and owing to the seller of a piano purchased by Mrs. Jensen, and, $9,000 to Mrs. Jensen's attorneys.

Mr. Jensen purchased RLJ stock at an average price of $1.56 a share. For 48,455 shares, he paid $75,589.80. Assuming the lowest valuation figure of $13.48, at the time of trial the shares of RLJ were worth $653,173.40. The enhancement in value of the RLJ shares awarded to Mr. Jensen, therefore, was $577,583.60. By our calculations, Mrs. Jensen received $118,295.75 in disproportionate benefits under the trial court's property division. Thus, assuming the lowest valuation of the RLJ stock, Mr. Jensen received approximately five times as much of the community as did Mrs. Jensen.

Mr. and Mrs. Jensen were married for 4 years and 10 months. Mrs. Jensen is 43 years old, had been married previously, and has two children, ages 21 and 19. She testified she was receiving no support or money from her first husband. Mrs. Jensen, previously employed as an executive secretary, became a full-time homemaker shortly after her marriage to Mr. Jensen.

In April of 1979, Mrs. Jensen went to work again to enable her son to go to college and for "some discretionary money." She worked for a period of time, but was unemployed at the time of trial and intending to look for employment. She testified that the highest salary she had previously made was $14,400. She stated that her skills qualified her to work in a secretarial capacity and that she anticipated her next job would be as a secretary. She also testified that she had no outside sources of income or salary. It is undisputed that Mrs. Jensen was fully aware of the facts surrounding the establishment of RLJ and encouraged Mr. Jensen in this endeavor.

Mr. Jensen also has been previously married, but the statement of facts discloses no obligations to his first wife or child support payments. He majored in accounting at the University of Iowa. He began work as an accountant for the Times Herald Printing Company and worked his way up to president of that company. In 1974, he left the Times Herald Printing Company (now Times Mirror Company). Mr. Jensen serves on the Board of Directors of several banks and corporations. In 1975, Mr. Jensen received a $90,000 salary settlement from the Times Mirror Company and $24,000 in salary from Newspaper Enterprises. In 1976, Newspaper Enterprises paid him a salary of $59,829.85. In 1977, he was paid $83,312 in salary and $12,114 in dividends. In 1978, Mr. Jensen received $84,338 in salary and $21,805 in dividends.

In light of the disparate earning powers and business experiences of appellant and appellee and the nature and growth potential of the RLJ shares, we think the trial court would have divided the RLJ stock increase differently had it been properly characterized as a community asset. We realize the trial court considered the enhanced value of the RLJ shares in making its property division, *Bell v. Bell, supra*; however, in our opinion, awarding Mr. Jensen almost five times as much community property as Mrs. Jensen constituted an abuse of discretion.

---

3. The statement of facts does not disclose the values of these items.

The judgment of the trial court is reversed and remanded with instructions to divide the enhanced value of the RLJ shares in light of the factors enumerated herein.